## STATE, EX REL. CONANT v. FULLER.

1. A writ of *mandamus* can only issue where there is a specific legal right to be enforced or a positive duty to be performed, and where there is no other specific remedy ; and this legal right embraces not only the character of the claim, but also the form in which it is presented.

2. This highest of judicial writs will not issue to compel a county treasurer to pay an auditor's checks for assessment expenses, where the accounts for which the checks were issued have not been examined and approved by the county commissioners, as required by the act of 1875, § 23, (15 *Stat.* 993,) and subsequent legislation.

Before KERSHAW, J., Beaufort, November, 1881.

This is an appeal from the following order of the Circuit judge. Other facts are stated in the opinion.

The claim of the relator is founded upon services rendered by assistant assessors in making the assessment for taxes in the year 1876, for which the relator holds the checks of the auditor on the treasurer of Beaufort county, as provided for in section 84 of the act of 1874, p. 762.

By that act, $1,000 were set apart to pay the expenses of the assessment, which was required to be paid out of the first money collected for the year for which such assessment was made. In this instance the funds collected were paid out without providing for these claims. Here, lately, other funds have come into the hands of the treasurer on account of the taxes of that fiscal year. And the object of this proceeding is to procure a writ of *mandamus* to compel the application of this fund to the claims of the relator, which were not paid as they should have been out of the money formerly collected. If they had been so paid there would have been a different set of claims displaced, which would have remained unpaid, but which have been satisfied out of money applicable first to the claims of the relator. There therefore does not appear any reason to doubt the equity of the present claims, and they ought to be paid unless there be objections of a legal character preventing the relief demanded.

If the funds now in the hands of the treasurer had been paid out at the time when the other taxes for that year were collected and before any payments had been made from the entire fund so collected, there can be no question that the fund would have been charged with the payment of claims like this. And it would have made no difference whether they were paid out of the money first collected or the last. In other words, there was no specific appropriation of the identical $1,000 first collected, so as to give the assessor the right to those specific dollars, and only to those, so that when these had been improperly paid out to the other parties the assessor had no right to be paid out of other funds left in the treasury. I do not think that the lateness of the time at which this fund has come into the treasury

can affect the rights of the relator. The taxes collected on account of that year, (1876,) whenever received, constitutes a fund applicable to those claims, which, under the act, constitute a class of claims preferred to the extent of $1,000, payable out of that fund.

This special preference was necessary in order to procure an assessment to be made, without which there could have been no taxes collected. They are necessary expenses of administration, without which, the laws would be inoperative upon which the maintenance of the government depends. I do not think, therefore, that they come under the general class of liabilities of the county, to be thrown into the category of past indebtedness. The legislature very distinctly indicated this by the peculiar provisions of the act of 1874, placing them upon an entirely different and peculiar footing. I have given consideration to the various objections urged at the bar and in the return of the respondent, and find nothing to justify a refusal of the relief desired by the relator. The act providing for a division of the counties of Beaufort and Hampton, and a division of the debt between them cannot affect this question, nor can any confusion result in consequence, since reference was required to be had in such division to the unpaid taxes due Beaufort county.

It is ordered and adjudged that a writ of *mandamus* do issue to command the treasurer of Beaufort county to pay the claims of the relator as demanded, but without costs.

*Messrs. Elliott & Fowles*, for appellant.

*Messrs. W. J. Verdier, J. D. Pope*, contra.

November 15th, 1882. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. On November 15th, 1881, John Conant, the relator, applied to Judge Kershaw for a writ of *mandamus* to compel R. B. Fuller, treasurer of Beaufort county, to pay him the amount of twelve warrants, aggregating $995. The affidavit of the relator set forth that at certain stated times in the years 1876 and 1877, L. S. Langley, then the auditor of

Beaufort county, " drew his warrants or checks as such auditor, and directed them to the treasurer of said county according to law, and required him to pay to the persons named in said warrants or checks the amounts therein named, being in payment of the expenses of the assessment of said county for taxation for the fiscal year 1876, and to charge the sum to the assessment fund ;" that thereafter said warrants or checks came to the hands of the relator, who is the lawful owner and holder thereof; that they were not paid by the then county treasurer, George Holmes, because there were then no funds in his hands applicable thereto ; that respondent has funds in his hands applicable to the payment thereof and refuses to pay the same, although requested so to do, and that the whole expense of making the assessment for said year (1876) is still due and unpaid. The checks, twelve in number, were drawn for various sums from $25 to $200, and, with one exception, were in favor of " bearer " or " J. W. Brown or bearer." Eleven were dated on various days in June, July and August, 1876, and the twelfth on January 16th, 1877.

The respondent made return, in which he admits that he has in his hands county funds for the fiscal year commencing November 1st, 1876, collected lately, in May and July, 1881, amounting to the sum of $882.86, but submits that the same is not applicable to the payment of relator's claims for various reasons therein set forth.

Judge Kershaw heard the case upon petition and answer, and granted the writ, we suppose, to the extent of the money in hand for the year commencing November 1st, 1876. The respondent appeals to this court upon the following grounds :

1. " Because his Honor granted the order upon equitable grounds, whereas it is submitted it should have been granted only to compel the performance of a clear duty, made obligatory by law upon the respondent.

2. " Because his Honor ruled that relator's claims had not become past indebtedness, and that the taxes collected for the year 1876, whenever received constituted a fund for the payment of such claims.

3. " Because his Honor ruled that the act creating the county of Hampton, and providing for a division of the debt of the

old county of Beaufort, between the present county of Beaufort and the county of Hampton, and the action of the commissioners appointed thereunder do not affect this question.

4. "Because the relator did not present said claims for payment at the time when the first collection of taxes, for said fiscal year were made by the then county treasurer, which said collection as claimed by him was applicable to the payment thereof.

5. "Because said claims, if valid, were payable from the proceeds of a tax levied by an act of the general assembly, approved March 22d, 1878, to be applied to the indebtedness of the county of Beaufort, for the fiscal year commencing November 1st, 1876.

6. "Because, under existing laws, respondent cannot legally pay said claims, except upon the checks of the county commissioners.

7. "Because said checks were not drawn in the manner then required by law, especially in this, that the alleged services for which they were drawn were not specified, nor were they ever audited or approved by the county commissioners.

8. "Because it is alleged in the return of the respondent, and not controverted, that said services were never rendered.

9. "Because no legal demand was made upon respondent for payment of said claim.

10. "Because respondent is not treasurer of the old county of Beaufort, but of the new county of Beaufort, and cannot therefore legally pay said claims."

The view which the court takes of this case renders it unnecessary to consider all the exceptions *seriatim*. It is well settled that the writ of *mandamus* can only issue to compel the performance of some act obligatory by law on the officer to whom it goes. He must have the ability to comply, and must be also under a clear duty in respect thereof. A writ of *mandamus* is the highest judicial writ known to the constitution and laws, and only issues when there is a specific legal right to be enforced, or where there is a positive duty to be performed, and where there is no other specific remedy. When the legal right is doubtful, or when the performance of the duty rests in discre-

tion, or where there is other adequate remedy, the writ cannot rightfully issue. *Hayne* v. *Hood,* 1 *S. C.* 23 ; *Ex parte Mackey,* 15 *S. C.* 323.

Did the relator have a legal right, clear and beyond doubt, so that it was the plain ministerial duty of the treasurer to pay these checks ? As we understand it, the legal right referred to embraces not only the character of the claim, but also the form in which it is presented, and this must be determined by the state of the law and facts existing at the time the proceeding was taken. The county treasurer is a public officer, and he cannot be compelled by *mandamus* to pay any claim unless it is presented in the form required by law. The demands presented to him for payment in this case were simply checks of the auditor of Beaufort county for the time being, without having been investigated by the county commissioners, or having any statement attached showing the services alleged to have been performed by the parties, in whose favor they were drawn, and the question is whether it was the plain ministerial duty of the treasurer to pay them in that form.

It is alleged that the checks were given for services rendered in assessing the property of Beaufort county, in the months of June, July and August, 1876, preparatory to the levy of taxes for the fiscal year commencing November 1st, 1876, and are chargeable upon, and should be paid out of any money in hands from that levy. The respondent denies that the services were ever rendered at all, and refers to circumstances connected with the checks to sustain the allegation, and insists that he could not lawfully pay them without audit, and that the mere check of the auditor was not such audit. The Circuit judge did not think it necessary to order an issue to ascertain the fact, and for the purposes of the case, we will assume that some such services were rendered.

In several respects this case is like that of *The State, ex rel. Wise* v. *Ransom,* 9 *S. C.* 200, certainly in reference to the time when the alleged services were rendered, and, therefore, if there is no good reason why these services should not be paid for, they would be chargeable to the levy for which they were rendered, commencing November 1st, 1876 ; but the question lies back of

that, whether the treasurer was bound to pay them at all, merely in the form of checks of the auditor under the act of 1874, which provided as follows : " That the treasurer of each of those above named counties shall pay to his county auditor, or his order, the sum specified in the auditor's warrant from the first collection of county funds of that fiscal year." °

After the passage of this act, it was soon perceived that so far as it directed the treasurer to pay such county claims simply on the check of the auditor, it was not in harmony with other provisions of the law, but anomalous and dangerous, if not unconstitutional. The policy of the law, undoubtedly, is to subject every county claim to the examination of the board of county commissioners, the tribunal provided for that purpose by the constitution. In this view, doubtless, the legislature passed the act of March 25th, 1876, 16 *Stat.* 194, which provided as to these claims for making assessments, as follows : " And the county commissioners of the several counties shall, upon the application of the county auditors, draw their checks on the county treasurers for the several amounts to which the auditors may be entitled under the provisions of this section, and the county treasurers shall pay the said checks from the first collection of county funds of the fiscal year in which the work shall be performed. But no such check or order shall be paid by the county treasurer until the auditor shall have filed with the county commissioners an itemized statement of the services rendered by his assistants," &c.

It is true that, although passed before, this act did not take effect until after the time these services were rendered, viz., November 1st, 1876 ; and on that account it was held, in the case of *Wise* v. *Ransom, supra,* that it did not apply to services rendered in June, July and August of 1876. But there was another act on the statute book at that time that seems to have been overlooked, which was in active operation, and, we think, repealed so much of the act of 1874 as directed the treasurer to pay such claims as these upon the naked check of the auditor. That was the act of April 13th, 1875. " To reduce all acts and parts of acts in relation to county commissioners, their powers and duties into one act, and to amend the same." 15 *Stat.* 993.

Section 23 of that act, after making some regulations as to numbering audited claims, provided as follows: " And after the passage of this act no claims of any class or description, drawn against any county in this State, shall be paid by the county treasurer of any county until such claims have first been examined, approved and allowed by the board of county commissioners of such county. And the said commissioners, after examining, approving and allowing such claims, shall, if there be funds in the hands of the county treasurer subject to the payment of said claims, draw their checks for the payment of said claims upon the treasurer of their respective counties, specifying the fiscal year for which the claims were contracted or incurred, and immediately cancel the said claims, and file the same in their office as a voucher for their draft. And it shall not be lawful for any county treasurer to pay any claim against the county, except upon the checks of the county commissioners of the said county, which shall bear upon their face not only the number, amount and name of the party in whose favor they are drawn, but the nature of the claims for which they are drawn, and the fiscal year in which they were contracted or incurred," &c.

This act, as stated, was passed in April, 1875, taking effect from its passage, which was before these services were rendered or checks were drawn. It expressly " repealed all acts and parts of acts inconsistent with it," and we think it repealed so much of the act of 1874 as made it the duty of the county treasurer to pay naked checks of the auditor without the approval of the county commissioners. This act was not referred to in the case of *State, ex rel. Wise* v. *Ransom, supra,* for the very good reason that it did not apply to that case, in which the question was made upon the order of the board of county commissioners, who had examined and approved the claim. It is important to preserve the symmetry of the law, which requires that a county treasurer shall not pay any claim against the county, except upon the check of the county commissioners, who are charged with the duty of raising the money for that purpose and giving checks for all proper county claims.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the petition for *mandamus* dismissed.